Philip Green (SBN 092389)
Beverly R. Green (SBN 092388)
Green & Green
1000 4th Street, Suite 595
San Rafael, CA 94901

(415) 457-8300
phil@iplegal.com

Attorney for Plaintiff
Headlands Ventures, LLC

E-filing
08 JAN -4 PM 3:44
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
ORIGINAL FILED
JSW

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CV 08 0059

| | |
|---|---|
| Headland Ventures, LLC, a California Limited Liability Company<br><br>Plaintiff,<br><br>vs.<br><br>Mike Brain, an individual and dba Mike's Bikes,<br><br>Defendants | Case No.:<br><br>COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, CYBERSQUATTING AND DOMAIN NAME INFRINGEMENT, FRAUD AND PALMING OFF, DILUTION AND FALSE DESIGNATION OF ORIGIN and FOR A PERMANENT INJUNCTION.<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, by its attorneys, for its Complaint against the Defendant, alleges:

## JURISDICTION AND VENUE

1. This is an action for violation of Sections 32 and 43 (a) and others, of the Lanham Act, 15 U.S.C. §§ 1114, 1125; for violation of Section 17200 et seq. of the California Business & Professions Code for unfair competition and other counts and for violation of the common law of the State of California pertaining to unfair competition, palming off, and dilution.

2. This Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. § 1338 and under principles of supplemental Jurisdiction, 28 U.S.C. §1367(a). Venue is proper in this Judicial district pursuant to 28 U.S.C. § 1391.

3. **Intradistrict Assignment.** Pursuant to Civil Local Rule 3-2(c), the basis for assignment to the San Francisco district is that all parties reside and have their places of business in the San Francisco Bay area.

## 1. THE PARTIES

4. Plaintiff Headlands Ventures, Inc ("Headlands Ventures") is an L.L.C. organized and existing under the laws of the State of California, maintaining a place of business at 819 5th Avenue San Rafael, CA 94901.

5. Upon information and belief, Defendant Mike Brain is an individual maintaining a place of business at 1150 Contra Costa Blvd. Pleasant Hill, CA 94523.

6. Upon information and belief, Defendant Mike Brain is a principal sole proprietor controls and is the owner of a “Mikes Bikes” shop at 1150 Contra Costa Blvd. Pleasant Hill, CA 94523.

## 2. THE TRADEMARK

7. Headlands Ventures is a leading seller and servicing facility of quality bicycles and components for bicycles for over 44 years.

8. Plaintiff adopted and has used the trademark MIKE’S BIKES for more than 44 years, has expended large sums to advertise, use and maintain its trademark and has established substantial good will in this mark. Specifically, Plaintiff and its predecessors in interest have used the MIKE’S

trademark since at least as early as December 31, 1964 and in advertising since 1966.

9.  Headlands Ventures believes that good service is the key to safe and enjoyable bicycling and since its founding in 1964, by Headlands Ventures' predecessors in interest, MIKE'S BIKES has been recognized as a reliable bicycle shop all over the San Francisco Bay Area.

10. Headlands Ventures, and its predecessors have used consistently the name "**MIKES**" since the mid 1960's with regard to its bicycle centers, shops, repair services retail bicycle sales, parts sales and services,  Retail outlets featuring bicycles; Retail shops featuring bicycles; Retail store services featuring bicycles; Retail store services in the field of bicycles featuring a bonus incentive program for customers; Retail store services, available through computer communications and interactive television, featuring bicycles and bicycle repair; Retail stores featuring bicycles and Retail bicycle stores.

11. By the time in late 1966 of one of its archival advertisements, Plaintiff had become a very popular bicycle retail and service center and had become known to its clientele and customers as **MIKE'S BIKES**.

12.  As an example of such advertising in November, 1966 predecessors in interest to Headlands Ventures, advertised in the Pacific Sun, a newspaper of general circulation in interstate commerce, the name **"MIKES"** Bicycle Center (See **Exhibit 1**).

13. Plaintiff has obtained a federal registration of its MIKE'S BIKES ® trademark on the Principal Register of the United States Patent and

Trademark Office, Registration No. 3100552 which is currently in full force and effect.   A copy of this registration is attached hereto as **Exhibit  2.**

14. MIKE'S BIKES and MIKE'S are in use in international commerce and have a program to supply bicycles to the African countries of Ghana and Botswana.  Plaintiff is making a difference by making bicycles a viable choice by providing financing and mentoring to an African bike dealer through the "Sister Shops" program in Botswana, and also as a technical and business educator in the California Bicycle Coalition's "Industry Roadshow Project" in Ghana.

15. During these past 44 years, Plaintiff has expended significant time, money, and effort to establish public recognition of its mark as identifying it as the source of high quality bicycle sales, service and support. As a result of these efforts, Plaintiff has established substantial consumer recognition of the Mike's Bikes trademark and goodwill, and it has become one of Plaintiff's valuable assets.

16. Plaintiff has developed and has used the Domain Name www.mikesbikes.com at least since 29 October, 1999 and has used the Domain Name mikesbicyclecenter.com  at least since 14 January, 1999 to advertise its services.  **See Exhibits 3 and 4**.

17. Since its humble beginning, Headlands Ventures and its predecessors in interest have built up the business so that today it maintains six stores throughout the Northern California area at six locations in San Francisco, Sausalito, San Rafael, Berkeley, Palo Alto, and Sacramento, for sales, service and parts of bicycles and bike riding, and is a frequent sponsor of Bicycle events, and is expanding.

18. On information and belief, and according to statements made on his website, Defendant Mike Brain started his business in 1982 in Pleasant Hill, CA, and Mike Brain was a mobile bike mechanic.

19. On information and belief, Defendant's use of the name "Mikes Bikes" is descriptive of Defendant's business since, *inter alia*, the name of the person who owns it is **Mike** Brain and it is a **Bike** shop, making Defendant's use of his infringing trademark descriptive and weak.

20. Defendant Mike Brain conducts his business over the internet through its website at http://mikesbicycles.com and on the website, in signs, advertisements and other ways Defendant Mike Brain advertises his business as "Mikes Bikes" which serves to increase confusion nationally and internationally (where Plaintiff is concerned for its African clientele who will be confused).

21. Defendant Mike Brain transacts business within this district, and on information and belief, derives revenue from local commerce, and has committed tortious acts within this district and also without this district having consequences within this district. Defendant is otherwise within the jurisdiction of this Court.

22. Defendant's use of "Mike's Bikes" in an almost identical style of font, signage, symbol, logo and lettering, is willfully causing confusion among the general public.  See **Exhibit 5.**

23. Upon information and belief, Defendant's use of *Mike's Bikes* is only a fictitious name for *Mike Brain* who is a sole proprietorship business organized and existing under the laws of the State of California.

24. Defendant is a seller of bicycle maintenance and repair services and retail services featuring bicycles and bicycle parts, apparel and accessories since February 1982, and in the exact same business as Plaintiff.

25. Upon information and belief, Defendant Mike Brain is the only principal and person in control of Mikes Bikes / Pleasant Hill.

26. Upon information and belief, Defendant sells his bicycle products and services to the general public in the Pleasant Hill area, and that he started it in direct competition and with full knowledge of MIKE'S BIKES ® and is acting in willful infringement of Plaintiff's rights.

27. Defendant has no federal or state-registered trademark applied for or registered.

## 3. INFRINGEMENT FACTS

28. It has recently come to Plaintiff's attention, in 2006 in part via an ABC News story mentioning Defendant, that Defendant and its company are using the identical trademark "Mike's Bikes" and the domain name "Mikesbicycles.com" for what are identical services.

29. Because of the increasing commercial character of the Internet and Plaintiff's launch of its own site on the World Wide Web, Defendant's store and advertising in this area Defendant's use of the Mike's Bikes trademark and the domain name has, and will continue to create confusion among internet browsers and "brick & mortar" shoppers who will believe any business identified by this name is maintained, sponsored by, or affiliated with Plaintiff, or worse, confused shoppers will use Defendant's services over Plaintiff's.

30. Defendant's willful and knowing use of the common law marks of Plaintiff and its registrations. Use by Defendant of this name violates Plaintiff's legal rights in its MIKE'S™ mark, MIKE'S BIKES® (Registration Number: 3100552 ) trademark MIKES BICYCLE CENTER® (Registration Number: 3103671) and the MIKES BIKES® logo mark, and constitutes unfair competition and infringement of Plaintiff 's trademarks.

31. Defendant's website states and Defendant advertises as follows: "Mike's Bikes started in 1982 in Pleasant Hill, CA. Mike was the first mobile bike mechanic." This means that Defendant's use post-dates Plaintiff's uses by at least 16 years and are infringements under state and federal law.

32. Plaintiff mailed Defendant a "cease and desist letter" on or about June 28, 2006 informing Defendant of the above facts and demanding Defendant cease the infringing conduct. Thereafter Defendant continued to willfully infringe the Plaintiff's mark, using two prior attorneys who on information and belief, recommended settlement in favor of Plaintiff's rights, before hiring a third.

33. Defendant continues to use the mark Mike's Bikes in knowing and willful violation of all the rights of Plaintiff. Accordingly:

## COUNT ONE

## TRADEMARK INFRINGEMENT (Lanham Act)

34. Paragraphs 1 through 33 inclusive are hereby incorporated by this reference as if here fully set forth herein at length.

35. Defendant's use, and continued use was and is contrary to the provisions of Section 2(a) and other sections of the Lanham Act.

36. Defendant was not and is not entitled to adopt and use the term “Mike's Bikes” because said mark, as applied to such goods and services, was and continues to be confusingly and deceptively similar to Plaintiff’s previously used aforesaid registered trademark MIKES BIKES and the trademark MIKE’S.

37. Use by Defendant of the mark “Mike's Bikes” for bicycle related goods and services, whether on the internet, or “brick and mortar,” falsely suggests a connection, sponsorship and otherwise with Plaintiff, when in fact there is not, and never was such a connection, and is likely to cause public confusion and mistake.

38. Use by Defendant of Mikes Bikes has actually caused public confusion on television, in the “Google®” mapping of retail locations and by the general public from customers who ask whether the Plaintiff is the Defendant.

39. Defendant adopted the mark “Mike's Bikes” for bicycle related goods and services, willfully, knowing full well that such use of the name, on the goods and services in question in the San Francisco Bay Area would and does confuse the public and falsely suggest to the purchasing public a

connection with Plaintiff when in fact there is none. These acts will likely cause further public confusion as MIKE'S BIKES ® expands.

40. Defendant's adoption of the mark "Mike's Bikes" for bicycle related goods and services, such as those at issue, are contrary to the provisions of the Lanham Act and are a willful infringement of the rights of Headlands Ventures in its marks.

41. Headlands Ventures has lost and will continue to lose valuable business to its financial detriment, the public will continue to be confused and Plaintiff's harm and injury will otherwise be irreparable, unless Defendant is enjoined from using Mike's Bikes.

## COUNT TWO TRADEMARK INFRINGEMENT
## (Common Law)

42. Paragraphs 1 through 41 inclusive are hereby incorporated by this reference as if here fully set forth herein at length.

43. Defendant has used, without the consent of the Plaintiff, reproductions, counterfeits, copies, and colorable imitations or Plaintiff marks of same exact type and has applied those reproductions, counterfeits, copies and colorable imitations to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in conjunction with the sale

or other distribution in this state of the same goods and services as Plaintiff without the consent of Plaintiff.

44. Plaintiff requests that Defendant be enjoined, and immediately cease use of the "Mike' Bikes" trademark and immediately surrender and assign all rights and interest in and to the Mike's Bikes name and its registration to Plaintiff , as Plaintiff's harm and injury will otherwise be irreparable.

## COUNT THREE UNFAIR COMPETITION
## (California Business & Professions Code §§17200 17500 et seq)

45. Paragraphs 1 through 44 inclusive are hereby incorporated by this reference as if here fully set forth herein at length.

46. As stated herein above, Defendant's conduct and practices constitute unfair competition, and on information and belief include unlawful, unfair and fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising and other acts prohibited by Section 17500 of the California Business and Professions Code and other statutes.

47. As more fully alleged herein Defendant performed acts of unfair competition, as defined by Business and Professions Code section 17200, by falsely designating the origin of Defendant's goods and services and by

falsely advertising the sponsorship of Defendant using the trademarks of Plaintiff, MIKE'S and MIKES BIKES®.

48. The acts of Defendant described above were and are likely to mislead the general public and therefore constitute and is unfair, fraudulent, and misleading within the meaning of Business and Professions Code section 17200, as alleged herein.

49. The unfair and willfully fraudulent and unlawful business practices of Defendant are likely to continue and therefore will continue to mislead the public by advertising that Defendant is "the" Mikes Bikes and not Defendant and presenting a continuing threat to and confusing the public.

50. As a direct and proximate result of the Defendant's conduct, Defendant has received money and made profit and continues to benefit from the MIKE'S trademark that rightfully belongs to and was first used by Plaintiff.

51. Members of the general public have relied on the MIKE'S trademark for the quality of MIKES BIKES® and have been confused by Defendants' conduct. By virtue of the confusion, Defendants acts have and will continue to cause, monetary and business losses and loss of reputation to Plaintiff in an amount according to proof.

COUNT FOUR CYBERSQUATTING

(UNDER ACPA 15 USC §1125(d)),

52. Paragraphs 1 through 51 inclusive are hereby incorporated by this reference as if here fully set forth herein at length.

53. Defendant's acts alleged herein are in violation of the Anticybersquatting Consumer Protection Act (ACPA) (15 USC §1125(d)).

54. On information and belief, by Defendant's conduct of using the domain name "mikesbicycles.com," Defendant is causing willful confusion with the Plaintiff trademark.

55. Defendant, with bad faith intent, registered mikesbicycles.com on 26 September, 2000, after the date of Plaintiff Headlands Ventures registrations of its mikesbicyclecenter.com and mikesbikes.com.

56. Defendant traffics in, and uses a domain name that is identical or confusingly similar to the trademark of Plaintiff, namely MIKES BIKES® in international and interstate commerce as fully described herein.

57. Defendant's use is likely to cause confusion and mistake.

58. Plaintiff's name or symbol is inherently distinctive, as it has been in continuous use for more than five years under Lanham Act Section 5(d) and therefore immediately protectable upon proper use as a mark.

59. Plaintiff's name or symbol has become distinctive through the acquisition of secondary meaning.

60. As a result of the act as aforementioned, Plaintiff has suffered and continues to suffer damages.

COUNT FIVE COMMON LAW UNFAIR COMPETITION

BY FRAUD AND PALMING OFF

61. Paragraphs 1 through 60 inclusive are hereby incorporated by this reference as if here fully set forth herein at length.

62. Defendant's conduct and practices constitute unfair competition in violation of applicable common law.

63. Said acts as are alleged herein of Defendant constitute infringement of plaintiff's common-law rights in said Plaintiff's trademarks.

64. Continuously since the mid 1960s Plaintiff has used the mark MIKE'S BIKES® and MIKE'S to identify its goods and services and to distinguish them from those made and sold by others, by, among other things, prominently displaying the mark MIKE'S BIKES® and MIKE'S on the goods, their containers and the displays associated therewith. In addition, Plaintiff has prominently displayed said marks on store fronts, buses, letterheads, newspapers, bills, direct mail advertising, radio, television and

telephone directory advertising, and in periodicals distributed in interstate commerce.

65. Said goods and services and advertising have been distributed in the trade area where Defendant is doing business.

66. As a result of said sales and advertising by Plaintiff under said mark, said mark has developed and now has a secondary and distinctive trademark meaning to purchasers in Defendant's trade area. Said marks have come to indicate to said purchasers the goods and services originating only with Plaintiff. As a result of said association by purchasers of the mark MIKE'S BIKES and MIKE’S with Plaintiff, in connection with bicycle sales and service, Defendant's said use of the mark and name Mike's Bikes is likely to cause confusion of said purchasers.

67. Defendant has committed Fraud and Palming Off and has infringed Plaintiff's mark as alleged herein with the intent to deceive the public into believing that goods sold by Defendant are made by, approved by, sponsored by or affiliated with, Plaintiff.

68. Defendant's acts as alleged herein were committed with the intent to pass off and palm off Defendant's goods as the goods of Plaintiff, and with the intent to deceive and defraud the public.

## COUNT SIX DILUTION

## (Federal Anti-Dilution Lanham Act § 43(c))

69. Paragraphs 1 through 68 inclusive are hereby incorporated by this reference as if here fully set forth herein at length.

70. The MIKE’S BIKES® and MIKE’S marks are strong and distinctive, have long been used in connection with the goods and services on which they appear, have long been the subject of substantial advertising and promotion, and have been and are used and advertised throughout the San Francisco Bay Area, globally and nationally on the Internet and elsewhere. These marks are widely recognized by consumers and those in the trade, is in substantially exclusive use by Plaintiff and is federally registered, as alleged above.

71. Plaintiff's mark MIKE’S BIKES is recognized by the general consuming public of the United States and internationally as alleged, as a designation of source for the bicycle related goods and services of Plaintiff and are therefore famous marks.

72. The acts of Defendant alleged herein were commenced from a time after Plaintiff's mark became famous.

73. Defendant has made use of Mike's Bikes as a mark or trade name in connection with goods which Defendant has sold and transported in United States interstate commerce.

74. Defendant's use of Mike's Bikes as a mark or trade name creates a likelihood of association with Plaintiff's famous marks MIKE'S and MIKE'S BIKES arising from its exact identity in appearance, sound and meaning to Plaintiff's famous mark.

75. Defendant's acts are in violation of Lanham Act § 43(c) in that they are likely to cause dilution by blurring by impairing the distinctiveness of Plaintiff's famous marks all to the irreparable injury to and damage of Plaintiff.

76. Defendant's acts are also in violation of Lanham Act § 43(c) in that they are likely to cause dilution by tarnishment by harming the reputation of Plaintiff's famous marks, all to the irreparable injury to and damage of Plaintiff.

77. Defendant committed these acts willfully at least 16 years after Plaintiff commenced use of its marks and with the intent to create an association with Plaintiff's famous marks. Defendant willfully intended to trade on the recognition of Plaintiff's famous marks and to harm the reputation of the famous marks.

COUNT SEVEN

(Violation of Lanham Act by Use of False Designation of Origin in Interstate Commerce)

78. Paragraphs 1 through 77 inclusive, are hereby incorporated by this reference as if here fully set forth herein at length.

79. Defendant has caused his goods and services to enter into interstate commerce with the designation and representation Mike's Bikes connected therewith.

80. Said use of Mike's Bikes is a false designation of origin which is likely to cause confusion, to cause mistake and to deceive as to the affiliation, connection or association of Defendant with plaintiff and as to the origin, sponsorship, or approval of such goods and services by Plaintiff.

81. These acts are in violation of 15 U.S.C.A. § 1125(a), in that Defendant has used in connection with goods and services a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant with Plaintiff and as to the origin, sponsorship, and approval of Defendant's goods, services and commercial activities by Plaintiff.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1. For Injunctive Relief for Infringement Under Federal Law, that this Court grant an injunction pursuant to the powers granted it under 15 U.S.C.A. § 1116, enjoining and restraining Defendant and its agents, servants and employees from directly or indirectly using the marks MIKE’S, MIKES Bicycle Center, MIKE'S BIKES or any other mark, word, or name similar to plaintiff's mark which is likely to cause confusion, mistake or to deceive.
2. That this Court, pursuant to the power granted it under 15 U.S.C.A. 1118, order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendant bearing the marks MIKE'S BIKES and MIKE’S in connection with bicycle sales and services and all plates, molds, matrices and other means of making the same, shall be delivered up and destroyed.
3. For Common-Law Unfair Competition, that this Court grant an injunction enjoining and restraining Defendant and its agents, servants and employees from (1) directly or indirectly using the word MIKE’S and MIKE'S BIKES or any other mark, word or name similar to Plaintiff’s mark which is likely

to cause confusion and (2) continuing any and all acts of unfair competition as herein alleged.

4. That Defendant be required to account to Plaintiff for any and all profits derived by Defendant from the sale of its goods and for all damages sustained by Plaintiff by reason of said acts of infringement and unfair competition complained of herein.
5. Treble Damages for Infringement under Lanham Act § 43(a), that this Court award Plaintiff treble the amount of actual damages suffered by Plaintiff.
6. Punitive Damages, that this Court award punitive and exemplary damages against Defendant and in favor of Plaintiff in the sum of at least $500,000 by reason of Defendant's fraud and palming off.
7. That costs of this action be awarded Plaintiff.
8. That this is an exceptional case and that Plaintiff be awarded its reasonable attorney's fees.
9. That this Court grants such other and further relief as it shall deem just.

DEMAND FOR JURY TRIAL

Dated: January 8, 2008

_______________________________

Philip Green, Attorney for
Plaintiff Headlands Ventures, L.L.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



# POINT of VIEW

By THOMAS A. [illegible]

## A FRESH DECK OF CARDS

After all the bets were down, and the hands were finally shown, it turned out that Ronald Reagan held not only all the high cards, but all the trumps as well. Every chip in the pot, except the office of California's chief law enforcement officer, went to the GOP team players. For both teams it then became time to break out a fresh deck of cards.

For the new GOP administration in Sacramento there will be no illusion of the mandate. So complete was the sweep that even the [illegible] legislative structure was shaken to its foundations. At this writing it appears that the Democrats have barely retained a paper-thin majority in legislative houses which were so carefully districted as to insure Democratic domination through all but the most thorough-going landslide. As the Reagan majority soared a million, that thorough-going landslide became a reality. In it, even Jesse Unruh, [illegible] in his [illegible] Democratic Assembly District, very nearly went under.

Deeply hidden in the last minute polls, the sweep astounded all sides, including Reagan and his managers. In the final week, the Reagan campaign had begun to branch into a team operation on behalf of Lt. Governor candidate Bob Finch, but the election of the rest of the ticket seemed out of reach. Now, in the afterlight, the new Administration has a free hand from top to bottom, and is even likely to find a Democratic legislative leadership overflowing with a nonpartisan cooperative attitude in response to its own [illegible] return to power. The honeymoon may be shortlived, but five days ago few would have predicted any honeymoon at all. And as an interesting sidelight, in the team play, Bob Finch ended up running substantially ahead even of Ronald Reagan in the final returns.

On the Democratic side, the whole process of candidate generation will now begin anew. Standing on the threshold of his 83rd year, the lone Democratic statewide survivor, Tom Lynch, will not present the kind of youthful image the party must have as a foundation for its future at the polls. Even though caught in the landslide not of his own making, the days of the [illegible] hegemony over Democratic [illegible] politics are certainly entering their twilight phase. His announcement on Friday that he would run for the Senate in 1968 is an obvious effort to head off this decline, but whether that effort succeeds or not is an open question. It will be in personalities not yet uncovered that the Democratic Party will inevitably turn in the years ahead. And so, in a single stroke, the old order [illegible] away, and the painful process of building from the ground up begins anew.

On all sides it appears that the worst was avoided. The clearly unconstitutional Proposition 16 was decisively turned back by an alert electorate. The legislature was given a new lease of life in the wide margin of approval given Proposition 1-A and its provisions for a full-time and commensurately compensated State Senate and Assembly. The electorate statewide recognized the need to preserve California's open space and took the first step in that direction by approving Proposition 3. The California Supreme Court Justices were overwhelmingly approved.

Thus, a widely feared bitterness in the election contests manifested itself weakly in the actual voting. Although a number of the vanquished are already beginning to [illegible] their defeat on an alleged viciousness which only they can see in the vote, we would all do better to listen instead to the opinion of Dr. Martin Luther King who believed that "the so-called white backlash was not as great a factor as many had predicted."

As the cycle of politics which began in California in 1958 ended here in 1966, the Democratic cycle of life which began in the Midwest in 1948 also ended there this year. Symbolically, the very same trio of leaders who brought fresh, post-New Deal life to the Midwestern Democracy in 1948 closed out their public effectiveness in 1966. It was [illegible] Williams in Michigan, Paul Douglas in Illinois and Hubert Humphrey in Minnesota, each making his first statewide race in 1948, who pulled Truman along in their wake to an upset electoral victory. This year Douglas was defeated in his bid for a fourth consecutive Senate term from Illinois, Williams failed in a comeback try in Michigan, and Hubert Humphrey personally engaged himself in the futile effort to restore order to his Democratic-Farmer-Labor Party in Minnesota. And so there, too, new life in the Democratic Party must yet begin to stir.

And just as the process of change remained orderly here through all California, the voters of Arkansas, Georgia and Maryland appeared to have rejected [illegible] extremism in their midst. The respective referenda on the [illegible] of White Supremacy in those states showed that the past is past after all, though a clear mandate against too hasty a departure from the old ways was also evident.

In times of trial, [illegible], it has been frequently observed that the American electorate behaves in a comparatively level-headed manner. In 1860 it took the cautious Lincoln over the man with "The Solution," New York's William Seward. In 1932, it was Roosevelt [illegible] of the radical Left, and settled instead for a [illegible] New York patrician with deep roots in the historic American economic system.

And so, in 1966, Californians and their Eastern cousins as well, mandated a substantial change in administrations, but took care in the process not to seriously aggravate already existing tensions in society. The depth of experience and the balance-wheel moderation of the rest of the Reagan ticket make the [illegible] at least fair that the new GOP Administration in Sacramento will refrain from breaking completely with historic California trends in government and economics. The first few miles down the road may be a bit bumpy while the new driver tries out an unfamiliar vehicle. But if those already on the thoroughfare will refrain for a judicious period from yielding to the temptation to play "chicken" with the new driver, we may yet find ourselves driving on the customary side of the street.

## East San Rafael Property Owners Meet PG&E

Property owners in the East San Rafael area have been [illegible] by P.G.&E. with the intention of the Company's acquisition of an additional 50 ft. easement, doubling their existing 50 ft. easement, in preparation for the [illegible] of future poles, towers and structures on the "Ignacio-San Rafael-Sausalito Tower Line."

The property owners involved held a meeting on Sept. 15, which resulted in the formation of an organization. The purpose of this group is to study what avenues are open to prevent endangering safety standards, and construction of unsightly structures above the ground. A meeting has been scheduled for P.G.&E. representatives to present their plans to property owners, public officials and interested [illegible], for discussion and question.

We strongly urge all interested [illegible] to attend this discussion in order to cope intelligently with the problem of meeting the power needs of the county without jeopardizing its safety and beauty.

## Bob Kaufm[illegible]

Still in prison, [illegible] made from human skin [illegible] mandant of the [illegible] camp in Buchenwald, [illegible] prison. She claims [illegible] the day before [illegible] of the [illegible] was condemned as a crimi[illegible]

She probably needs [illegible] kids to camp.

X X [illegible]

In Sydney, Australia, [illegible] Premier, [illegible] President on his trip [illegible] out of his car to talk [illegible] up the motorcade and [illegible] the generosity of the [illegible] President Johnson's [illegible]

Sure. And a lot of [illegible] loans and [illegible]

X X [illegible]

Food researchers in [illegible] declassified, anti-[illegible] serves eggs without [illegible] of time. [illegible] at this control [illegible] expected to help their [illegible]

They're not nearly as [illegible] [illegible], who really [illegible]

## Indian Bear[illegible]
## Uncovered b[illegible]

A remarkably preserved [illegible] of ancient North American [illegible] were spiritual equals [illegible] versity of California [illegible]

Students at the Berkeley [illegible] evidence of a widely prevalent [illegible] golden bears were given [illegible] is in keeping with what [illegible] for many years—that [illegible] the white man, believed [illegible]

The Berkeley group, [illegible] the Department of Anthropology [illegible] of Anthropology, found [illegible] a human child—in a [illegible] site is located near [illegible] of Contra Costa County, [illegible] Joaquin rivers [illegible]

The usual California [illegible] was given the animal [illegible] yielding shell beads and [illegible] Museum, students have [illegible] as they were uncovered, [illegible] one of its paws placed [illegible] estimated to have died [illegible]

Radio carbon dating [illegible] remains are about 1,500 [illegible]

According to a [illegible] Harold Driver, authority [illegible] bear ceremonialism was [illegible] in the northern half of [illegible] Driver says, there were [illegible] [illegible] whose souls [illegible] bodies and to activate the [illegible]

Driver's studies reveal [illegible] were spiritually equal [illegible] they are physically equal [illegible] animal, then, had a soul [illegible] and was able to report [illegible] been killed, butchered [illegible] posal of inedible parts.

Should a hunter fail [illegible] he offended the spirit of [illegible] [illegible] to inform other [illegible] [illegible]. Souls of [illegible] got wind of such [illegible] to be slain by such [illegible] [illegible] failed to get any [illegible]

PACIFIC SUN
Saturday
November 12, 1966

# BICYCLES

CHRISTMAS LAYAWAYS

We are happy to announce the opening of a complete Bicycle Center with over 150 SCHWINN Bicycles in stock at all times, plus a thorough Service Department.

Mike's BICYCLE CENTER

San Rafael's ONLY Bike Shop
1633 4th St., at G 454-3747
SAN RAFAEL

Plenty of Parking

Luncheon

Business or Social is more inviting at

Sabella's of Marin

Highway 101 at Richardson Bridge

388-6344

open every day

**Int. Cls.: 35 and 37**

**Prior U.S. Cls.: 100, 101, 102, 103 and 106**

**Reg. No. 3,100,552**

**United States Patent and Trademark Office** Registered June 6, 2006

**SERVICE MARK**
**PRINCIPAL REGISTER**

# MIKE'S BIKES

HEADLANDS VENTURES, LLC (CALIFORNIA LTD LIAB CO)
1601 FOURTH ST
SAN RAFAEL, CA 94901

FOR: RETAIL BICYCLE, BICYCLE PARTS AND ACCESSORIES STORES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 12-31-1964; IN COMMERCE 12-31-1964.

FOR: REPAIR AND MAINTENANCE OF BICYCLES, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

FIRST USE 12-31-1964; IN COMMERCE 12-31-1964.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "BIKES", APART FROM THE MARK AS SHOWN.

SER. NO. 78-630,483, FILED 5-27-2005.

DAVID H. STINE, EXAMINING ATTORNEY

Mike's Bikes - Home

mike's bikes
for the ride of your life
Sacramento
San Rafael
Sausalito
(888) 696-BIKE
Berkeley
San Francisco
Palo Alto
Home
My Account
Wednesday, June 7, 2006
E-mail Us
Site Search
go
Browse Featured Bikes
All About Mike's Bikes
Tips, Groups, Rides, and Resources
Jobs at Mike's
Rentals at Mike's Bikes
Special Order Catalog
90-Day Financing
Printable Coupons
Shop Online Now With BikeSmart.com!
511.org Bike Resources
Enter your e-mail
go
Sign-up here for email updates from Mike's
we've put our foot down
IN SACRAMENTO
Feature Items
'05 Litespeed Firenze | 105
Reg: $2,399.99
Sale: $1,799.00
What would happen if Litespeed made a completely traditional bike frame out of high-tech materials? The Firenze. The Firenze is a classic round-tube... [more]
'06 Specialized Allez Sport Triple
Reg: $930.00
Sale Price: $849.99
One ride and you'll see why we hold the Allez Sport Triple in high regard. It features Specialized's light and great-handling A1 Premium Aluminum... [more]

**The paint is dry, the doors are open, come check out Northern California's biggest bike shop!**

The newest Mike's Bikes is a big honkin' slice of bike heaven right in the heart of downtown Sacramento. With 12,000 square feet of the best gear in the cycling world, there is no better place to get your bike fanatic fix anywhere near Capitol City.

Click here for more pics and info on Mike's Bikes of Sacramento.

---

**Mike's Bikes introduces 90-day same as cash financing, right from our website!**

http://mikesbikes.com/index.cfm (1 of 4)6/7/2006 10:05:56 AM

Complaint for Trademark Infringement
Exhibit 3



Who We Are - mikesbikes.com

mike's bikes
for the ride of your life.
Sacramento San Rafael Sausalito (888) 696-BIKE Berkeley San Francisco Palo Alto

Home My Account Wednesday, December 19, 2007 E-mail Us

Site Search

Mikes's Web Specials
Browse Bikes
Special Order Catalog
Shop at BikeSmart.com
90-Day Financing

Money-Saving Coupons
All About Mike's Bikes
Mike's Image Gallery
Our Africa Projects
Rentals at Mike's
Free Maintenance Clinics
Jobs at Mike's

Tips and Resources
Group Ride Directory
Recall Notices

511.org Bike Resources
Bicycle Blogs We Dig
Companies We Dig
Specialized Rider Club

Enter your e-mail

Enter your email address to receive updates on special events and sales at Mike's Bikes

## Who We Are

Mike's Bikes 40th Anniversary

**Mike's Bikes was founded in 1964** as one of Marin County's very first Schwinn shops. It is rumored that our store in San Rafael was home to some of the first mountain bikes in the country. Cycling has changed dramatically over these past 43 years, but Mike's Bikes has never wavered from our total dedication to the sport.

Today, Mike's Bikes is part of a growing family of local bike shops, all with a singular purpose - to get as many lucky Bay Area people on bikes as possible. We locally own and operate six wildly successful stores in San Rafael, Sausalito, San Francisco, Berkeley, Palo Alto and our newest store in downtown Sacramento! Our professional staff of over 100 enthusiast cyclists will ensure that your experiences both in the store and on your bike are the best they can be.

Why shop with us? Because we know bikes and we care. We don't sell snowboards, we don't sell kayaks and we don't sell tents. **We only sell bikes** - you might even say bikes are our life. Why does that matter? Because this utter fanaticism for our product makes us the best at what we do - **We live to create cyclists.**

Our History

Ken Martin has been selling bikes for the majority of his life, and after school, had a chance to make a career of it by moving to California and managing a single store called Mike's Bikes. Ken led the store to new highs in both sales and reputation and a few years later, the company expanded with the purchase of Sausalito Cyclery.

Dave Kaplan owned both of these Marin County shops and when it came time for him to move on, he wanted his young protégé to carry on the tradition. So in February 1998, Ken teamed up with his friend and former customer, Mike Gabrys, and together, they took on the project of their lives. In 2005, they invited their General Manager, Matt Adams, to purchase a stake in the company and he immediately jumped on board as the third Mike's Bikes partner.

Today, Ken and Matt manage the operation and the future of Mike's Bikes has never been brighter. We recently opened our sixth store in the heart of Sacramento, and we're now drawing customers from all

http://mikesbikes.com/page.cfm?pageID=30 (1 of 4) [12/19/2007 9:38:46 AM]





Complaint for Trademark Infringement

Exhibit 5